NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2775-12T1

R. NEUMANN & CO.,

    Plaintiff-Appellant,

v.

CITY OF HOBOKEN, CITY COUNCIL OF
THE CITY OF HOBOKEN, DAWN ZIMMER,
MAYOR OF THE CITY OF HOBOKEN, and
PLANNING BOARD OF THE CITY OF HOBOKEN,

    Defendants-Respondents.

---

| APPROVED FOR PUBLICATION |
| :---: |
| September 23, 2014 |
| APPELLATE DIVISION |

Argued December 4, 2013 - Decided September 23, 2014

Before Judges Grall, Nugent and Accurso.

On appeal from Superior Court of New Jersey,
Law Division, Hudson County, Docket No.
L-6146-11.

Peter D. Dickson argued the cause for
appellant (Potter and Dickson, attorneys; R.
William Potter and Mr. Dickson, on the
brief).

Ronald D. Cucchiaro argued the cause for
respondents (Weiner Lesniak, LLP, attorneys;
Mr. Cucchiaro, of counsel and on the brief;
Richard Brigliadoro, on the brief).

    The opinion of the court was delivered by

GRALL, P.J.A.D.

This appeal concerns Resolution No. 1 of the City Council of the City of Hoboken (Council) adopted pursuant to the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -49. With that resolution, the Council delineated an "area in need of rehabilitation" (AINreh), which "means any area determined to be in need of rehabilitation pursuant to [N.J.S.A. 40A:12A-14]." This AINreh includes public streets and private properties, some of which are owned by plaintiff R. Neumann & Co. (Neumann) and known as the "Neumann's Leathers" properties. The Council adopted the resolution on October 19, 2011.

In delineating this AINreh, the Council relied on N.J.S.A. 40A:12A-14(a)(2)-(3) (recodified as N.J.S.A. 40A:12A-14(a)(6) by L. 2013, c. 159 approved on Sept. 6, 2013). Those portions of N.J.S.A. 40A:12A-14 permit a governing body to delineate an AINreh if it determines that "a majority of the water and sewer infrastructure in the delineated area is at least [fifty] years old and is in need of repair or substantial maintenance" and further determines that a "program of rehabilitation, as defined in [N.J.S.A. 40A:12A-3], may be expected to prevent further deterioration and promote the overall development of the community." Ibid. (emphasis added). As defined in N.J.S.A. 40A:12A-3, "'[r]ehabilitation' means an undertaking, by means of extensive repair, reconstruction or renovation of existing

2                                                          A-2775-12T1

structures, with or without the introduction of new construction or the enlargement of existing structures, <u>in any area that has been determined to be in need of rehabilitation or redevelopment</u> . . . ." (emphasis added). The rehabilitation must be undertaken "to eliminate substandard structural or housing conditions and arrest the deterioration of that area." <u>Ibid.</u>[1]

N.J.S.A. 40A:12A-14 also prescribes procedures a governing body must follow prior to adopting a resolution delineating an AINreh, and the Council followed them. The Council submitted two draft resolutions to the City's Planning Board (Board) for its consideration and recommendations as required by <u>N.J.S.A.</u> 40A:12A-14 — one in April and one in June 2011 that expanded the

---

[1]  The language emphasized is misquoted at page 46 of Neumann's brief in an argument supporting its claim that the trial court misapplied a provision of the LRHL. Neumann's quotation omits the words "rehabilitation or."

It is important to stress that the LRHL distinguishes between AINrehs and areas in need of redevelopment (AINreds). "'Redevelopment area' or 'area in need of redevelopment' means an area determined to be in need of redevelopment pursuant to [<u>N.J.S.A.</u> 40A:12A-5 and 40A:12A-6] or [previously] determined . . . to be a 'blighted area' pursuant to [<u>L.</u> 1949, <u>c.</u> 187, <u>N.J.S.A.</u> 40:55-21.1 et al.] repealed by this act, both determinations as made pursuant to the authority of Article VIII, Section III, paragraph 1 of the Constitution, [which is the Blighted Areas Clause]. . . ." <u>N.J.S.A.</u> 40A:12A-3. While rehabilitation may be undertaken in both areas, the LRHL grants a municipality authority to take or acquire property in an AINred but expressly precludes exercise of eminent domain based on delineation of an AINreh. <u>See</u> <u>N.J.S.A.</u> 40A:12A-15 (quoted in footnote 8); <u>N.J.S.A.</u> 40A:12A-8(c).

initial proposed area to include additional private properties and the public streets that delineate the boundaries of the area. The Council also directed the Board to conduct a public hearing on the proposed resolution after giving notice by publication and by mailing to the owners of record of properties with 200 feet of the proposed delineated area, steps not expressly required by N.J.S.A. 40A:12A-14.

On July 2, 2011, the Council passed a resolution extending the forty-five-day statutory deadline for the Planning Board to provide its recommendations, N.J.S.A. 40A:12A-14, and the Board conducted a hearing and approved the draft resolution without recommending any change on September 27, 2011.[2] The Council adopted Resolution No. 1 after accepting public comment at its regular meeting.

This AINreh is a flag-shaped area in part of the southwestern section of Hoboken that includes and is demarked by

_____

[2] The record provided on appeal includes a transcript of the September 27, 2011 public hearing before the Board and the vote of its members on a motion. Just prior to the vote, the Board's attorney described the motion as follows: "[T]he Board will recommend, that the study area be declared . . . an area in need of rehabilitation based upon the findings of the Board and the reports provided the Board's Planner and the Board's Engineer which will be forwarded to the City Council . . . for their use and that we're making that finding pursuant to the [LRHL]." The record provided to us on appeal does not include a resolution or correspondence transmitting its vote or the referenced materials to the Council. But the Council's resolution indicates that the reports were received.

public streets.  The flag's pole is Observer Highway from its intersection with Jefferson Street easterly to its intersection with Hudson Street.  The triangular-shaped flag runs northerly from and includes the intersection of Observer Highway's intersection with Willow Avenue, and from that intersection north to and including its intersection with Newark Street and from that intersection along Newark Street in a southwesterly direction to and including its intersection with Observer Highway.

The private properties included in this AINreh are known as Block 2, Lots 12 through and including Lot 26, and Block 2.1, Lots 1 through and including Lot 10.  The total area, including the streets, is about 11.5 acres in area, only 3.3 of which are private property.

The Neumann Leathers properties, which Neumann describes as older industrial buildings, include all of the designated Lots in Block 2 and Lots 1 through 4 plus Lots 9 and 10 in Block 2.1. It does not include some private properties at the southwestern tip of the triangle formed where Newark Street meets Observer Highway.  Neumann refers to the excluded properties as a "hole" in the flag portion of the AINreh.  According to defendants, the shape is attributable to the exclusion of newer buildings and prior designations of AINrehs and AINreds in the areas on the

far side of the bordering streets. According to Neumann, the shape is the consequence of the Council's true purpose — protection of the artists, artisans and musicians that rent space in Neumann's buildings and serve the City's interest in cultural activities and retention of old industrial buildings that have historical significance as reminders of the industry that built the City. Those interests and concerns about the sewer system are expressed in the City's 2004 Master Plan, its 2010 Reexamination Report and numerous press releases and public statements from the mayor.

Following the adoption of Resolution No. 1 on October 19, 2011, Neumann filed a complaint naming as defendants the City of Hoboken, the Council, the City's Mayor, Dawn Zimmer, and the Board. The complaint asserts three claims in lieu of prerogative writs, in which Neumann contends that Resolution No. 1 is not supported by adequate evidence, is motivated by a pretextual purpose and is inconsistent with the LRHL. Neumann's complaint also includes four counts seeking damages alleging interference with its rights to property, free speech and equal protection and asserting a "de facto taking" amounting to an inverse condemnation. No testimony was taken in the trial court, and the case was decided and the record developed before

the Planning Board and Council, as supplemented by the motions and motions for reconsideration in the trial court.

This appeal is from the trial court's order of January 11, 2013. With that order, the court denied Neumann's second motion to reconsider a July 2, 2012 judgment dismissing the prerogative writs claims with prejudice, and the court granted defendant's summary judgment on the claims for damages.[3] Because Neumann presents no argument on appeal claiming error in the dismissal of its claims for damages, any related error is deemed abandoned. Muto v. Kemper Reinsurance Co., 189 N.J. Super. 417, 420-21 (App. Div. 1983).

On appeal, Neumann challenges the court's disposition of the prerogative writ claims on six grounds: the court applied the wrong standard of review; the water and sewer infrastructure is not on the Neumann's Leathers property; the City does not own the infrastructure and, therefore, a program of rehabilitation cannot be expected to prevent further deterioration or promote development of the community; the court misapplied Riggs v. Township of Long Beach, 109 N.J. 601 (1998), in denying relief based on pretextual motivation; the Legislature intended to permit delineation of an AINreh based on the age and condition

_____

[3] Following the denial of its second motion for reconsideration, Neumann filed a motion for leave to appeal, which this court denied on October 5, 2012.

of a majority of water and sewer infrastructure only if a majority of the housing stock is also at least fifty years old; and this AINreh violates the Blighted Areas Clause of the State Constitution, N.J. Const. art. VIII, § 3, ¶ 1.

I

Where, as here, there is a challenge to a determination of a municipal agency, "an appellate court is bound by the same scope of review" as the trial court. Charlie Brown of Chatham, Inc. v. Bd. of Adj. for Chatham Tp., 202 N.J. Super. 312, 321 (App. Div. 1985). Municipal action "bears with it a presumption of regularity." Forbes v. Bd. of Tr. of Tp. of S. Orange Vill., 312 N.J. Super. 519, 532 (App. Div.), certif. denied, 156 N.J. 411 (1998). Thus, "when reviewing a decision of a municipal agency the trial court must recognize that the Legislature has vested discretion in the municipal agency to make that decision." Charlie Brown, supra, 202 N.J. Super. at 321; see Booth v. Bd. of Adj., Rockaway Tp., 50 N.J. 302, 306 (1967). "[B]ecause of their peculiar knowledge of local conditions," they "must be allowed wide latitude in the exercise of their delegated discretion." Ibid. A panel of this court "need not determine if [it] would have concurred in the designation but

only if it is supported by substantial evidence." Forbes,

supra, 312 N.J. Super. at 532.[4]

The Supreme Court has recognized that "the extent to which

the various elements that informed persons say enter into the

blight decision-making process are present in any particular

area is largely a matter of practical judgment, common sense and

sound discretion." Lyons v. City of Camden, 52 N.J. 89, 98

(1968). In such circumstances, "courts realize that the

Legislature has conferred on the local authorities the power to

make the determination. If their decision is supported by

---

[4] It is important to note that it is the governing body's, not the planning board's, determination that a court reviews. N.J.S.A. 40A:12A-14(a) vests the authority to delineate an AINreh in the governing body not the planning board. The role the Legislature has assigned to the planning board is advisory. The governing body must submit a resolution to the municipal planning board before adopting it, and give the planning board forty-five days to submit "its recommendations regarding the proposed resolution, including any modifications" it may recommend. Ibid. But upon receipt of the recommendations, or after forty-five days if none are received, the governing body "may adopt the resolution, with or without modification." Ibid. Thus, the Legislature has delegated the responsibility, power and discretion to delineate an AINreh in conformity with the statute to the governing body. To the extent the trial court concluded that the planning board's action was under review, the court erred. See Kane Prop., LLC v. City of Hoboken, 214 N.J. 199, 226-28 (2013) (concluding, in another context, that where the governing body makes the final decision on a land use matter — when the governing body has elected to entertain appeals from a zoning board's grant of a use variance as authorized by N.J.S.A. 40:55D-17 — the courts review the decision of the governing body not the zoning board).

substantial evidence, the fact that the question is debatable does not justify substitution of the judicial judgment for that of the local legislators."  Ibid.; see also Gallenthin Realty Development, Inc. v. Borough of Paulsboro, 191 N.J. 344, 372 (2007).[5]

Some determinations about conditions that qualify an area as one in need of rehabilitation are similarly a matter of practical judgment and sound discretion.  In fact, in Bryant v. City of Atlantic City, 309 N.J. Super. 596, 614-16 (App. Div. 1998), we rejected a challenge to a governing body's delineation of an AINreh under an earlier iteration of N.J.S.A. 40A:12A-14.  In Bryant, the City adopted a resolution setting forth the statutory criteria on which it relied.  309 N.J. at 615-16.  We concluded that "[t]he City sufficiently complied with the

_____

[5]    Defendants have urged us to consider unpublished opinions of this court that suggest consideration of the adequacy of the support in the record is not required.  In discussing arbitrary decision making by a State officer, the Supreme Court noted that parties "concede[d] that the arbitrary, capricious, or unreasonable standard applicable in the review of administrative agency decisions subsumes the need to find sufficient support in the record to sustain the decision," and the Court went on to state that the "point is beyond argument."  In the Matter of Proposed Quest Academy Charter School of Montclair Founders Group, 216 N.J. 370, 386 (2013).  To the extent the unpublished opinions of this court addressing delineations of AINrehs suggest otherwise, we would not follow them.  Bryant v. City of Atlantic City, 309 N.J. Super. 596, 616 (App. Div. 1998) (noting that there was "more than sufficient evidence to support the City's" determination and discussing the evidence).

requirements of N.J.S.A. 40A:12A-14, which, by its plain language, requires only that the City determine by resolution that the conditions exist before an area can be designated as one in need of rehabilitation." Id. at 616. And, we noted our agreement with the trial court's "conclusion that there was more than sufficient evidence to support the City's conclusion in this respect." Ibid.

We cannot take the approach adopted in Bryant in this case, because it is not at all clear that the Council applied the statutory criteria and because aspects of the criteria upon which the Council relied are quite specific and leave little room for discretion. Governing bodies of municipalities are "creations of the State" and as such are "capable of exercising only those powers of government granted to them by the Legislature." Wagner v. Mayor & Mun. Council of City of Newark, 24 N.J. 467, 474 (1957). Thus, substantial evidence supporting municipal action prevents judicial interference, but only "so long as the power exists to do the act complained of." Kramer v. Bd. of Adj., Sea Girt, 45 N.J. 268, 296 (1965).

To the extent Resolution No. 1 addresses the basis for the delineation of the AINreh, it misstates the statutory standard upon which the Council relied. Resolution No. 1 includes "WHEREAS" clauses citing the Council's statutory authority to

determine whether certain areas are in need of rehabilitation, identifying the area "it believes" is in need of rehabilitation, and noting its obligation to refer the question to the Planning Board and its compliance on June 1, 2011. Following those recitals Resolution No. 1 states:

> WHEREAS, the City Planning Board received a report from the Planning Board Engineer and the Planning Board Planner that within the Property the water and sewer lines are at least [fifty] years old <u>or</u> are in need of substantial maintenance; and that a program of rehabilitation is expected to prevent further deterioration and to promote the overall development of the City (the "Report"); and

> WHEREAS, based on the Report, the Planning Board found that the Property satisfied the statutory criteria to be designated as an area in need of rehabilitation under Section 14 of the Redevelopment Law, <u>N.J.S.A.</u> 40[A]:12A-14(a); and

> WHEREAS, the Planning Board reviewed this resolution and recommends its adoption and the designation of the Property as an area in need of rehabilitation in accordance with Section 14 of the Redevelopment Law, <u>N.J.S.A.</u> 40[A]:12A-14(a).

> NOW, THEREFORE, BE IT RESOLVED, by the City Council of the City of Hoboken as follows:

> Section 1. The aforementioned recitals are incorporated herein as though fully set forth at length.

> Section 2. The City Council hereby designates the Property as an area in need of rehabilitation pursuant to Section 14 of

A-2775-12T1

the Redevelopment Law, N.J.S.A. 40[A]:12A-14(a).

> Section 3.  The City Council hereby directs that the City Clerk transmit a copy of this resolution to the Commissioner of the Department of Community of [sic] Affairs for review in accordance with the Redevelopment Law.
>
> Section 4.  A copy of this resolution shall be available for public inspection at the offices of the City.
>
> Section 5.  This resolution shall take effect immediately.

[(emphasis added).]

The statute, N.J.S.A. 40A:12A-14, as it was written prior to the adoption of L. 2013, c. 159, set forth the criteria for delineation of an AINreh related to water and sewer infrastructure as follows:

> a.  A delineated area may be determined to be in need of rehabilitation if the governing body of the municipality determines by resolution that there exist in that area conditions such that . . . (2) more than half of the housing stock in the delineated area is at least [fifty] years old, or a majority of the water and sewer infrastructure in the delineated area is at least [fifty] years old and is in need of repair or substantial maintenance; and (3) a program of rehabilitation, as defined in [N.J.S.A. 40A:12A-3], may be expected to prevent further deterioration and promote the overall development of the community.

Resolution No. 1 indicates that the Council relied on a report from the Planning Board Engineer and the Planning Board

Planner "that within the Property the water and sewer lines are at least [fifty] years old or are in need of substantial maintenance." (emphasis added). But clause (2) provides, "or a majority of the water and sewer infrastructure in the delineated area is at least [fifty] years old and is in need of repair or substantial maintenance." (emphasis added). The statute simply cannot be read to permit a determination based on either the age of the majority of the infrastructure or the infrastructure's being "in need of repair or substantial maintenance." If there were any doubt about whether the structure of clause (2), with its reference to the age of housing stock and infrastructure, permitted a reading of the "and" in clause (2) as an "or," there no longer is.

After this appeal was fully briefed but before it was argued, the Legislature amended the LRHL with Chapter 159 of the Laws of 2013. L. 2013, c. 159 (approved September 6, 2013). Defendants, as authorized by Rule 2:6-11(d), filed a letter bringing Chapter 159 to our attention in May 2014, and Neumann filed a response.[6] In land use cases, "[a]n agency or reviewing court will apply the law in effect at the time of its decision rather than the law in effect when the issues were initially

_____

[6]    Neither party requested an opportunity to brief the relevance of the revisions to Chapter 159.

presented," Maragliano v. Land Use Bd. of Tp. of Wantage, 403

N.J. Super. 80, 83 (App. Div. 2008), certif. denied, 197 N.J.

476 (2009); see also Manalapan Realty, L.P. v. Tp. of Manalapan,

140 N.J. 366, 378-79 (1995); Riggs v. Tp. of Long Beach, 101

N.J. 515, 521 (1986).  Accordingly, we apply the law as it

stands now.

As amended by section 4 of Chapter 159, the portion of

clause (2) of subsection a. of N.J.S.A. 40A:12A-14 addressing

aged housing stock is addressed in clause (2), but aged water

and sewer infrastructure is addressed separately in clause (6)

as follows: "a majority of the water and sewer infrastructure in

the delineated area is at least [fifty] years old and is in need

of repair or substantial maintenance."  (emphasis added).  The

amendment eliminates the need to ponder what the Legislature

intended here.  The statute is unambiguous and must be applied

in accordance with the plain meaning of its terms, which is the

best indicator of the Legislature's intention.  Gallenthin,

supra, 191 N.J. at 359, 365.

There is absolutely nothing in the Resolution indicating

that the Council determined that the area it delineated is in

need of rehabilitation in conformity with N.J.S.A. 40A:12A-

14(a)(6), as it is written now, or with N.J.S.A. 40A:12A-

14(a)(2)-(3), as those provisions were written prior to the

adoption of L. 2013, c. 159.  In short, Resolution No. 1 must be vacated, because we cannot conclude the Council "determine[d] by resolution [that an] enumerated condition exists."  Bryant, supra, 309 N.J. Super. at 615.

We are left with a significant doubt about whether Resolution No. 1 is arbitrary, capricious and unreasonable because it rests on the Council's disregard or misunderstanding of the statutory standard.  And for that reason, we vacate Resolution No. 1.

We further conclude that it is appropriate to vacate Resolution No. 1 without prejudice to the Council reconsidering the question in light of the pertinent amendments to the LRHL the Legislature made by adopting L. 2013, c. 159.  We reach that conclusion because our decision to vacate the Resolution is not based on the inadequacy of the evidence.

## II

In the interest of avoiding unnecessary and costly proceedings in the event that the Council pursues delineation of this AINreh, we address Neumann's claims about the meaning of N.J.S.A. 40A:12A-14.  None has sufficient merit to warrant extended discussion.

The LRHL authorizes municipal governing bodies to undertake clearance, replanning, development and redevelopment, directly

16                                                              A-2775-12T1

or through a redevelopment agency, housing authority or redevelopment entity. N.J.S.A. 40A:12A-3, 40A:12A-4, 40A:12A-11, 40A:12A-21. In adopting the LRHL, the Legislature determined that in some communities in this State there have been and still are

> conditions of deterioration in housing, commercial and industrial installations, public services and facilities and other physical components and supports of community life, and improper, or lack of proper, development which result from forces which are amenable to correction and amelioration by concerted effort of responsible public bodies, and without this public effort are not likely to be corrected or ameliorated by private effort.
>
> [N.J.S.A. 40A:12A-2(a).]

The Legislature adopted the LRHL with the intention to "arrest and reverse" such conditions and to "promote the advancement of community interests through programs of redevelopment, rehabilitation and incentives to the expansion and improvement of commercial, industrial and civic facilities." N.J.S.A. 40A:12A-2(b)-(d). Moreover, as the Preamble to Chapter 159 of the Laws of 2013, phrased as "WHEREAS" clauses, makes clear, the Legislature has determined that "[m]unicipalites should be encouraged to engage in economic development initiatives by promoting and facilitating such efforts to create local economic stimulus and job creation through the tools and

incentives available under the" LRHL and, to that end, "should be provided the opportunity to pursue such programs without the use of eminent domain."  L. 2013, c. 159 (reprinted as a note following N.J.S.A. 40A:12A-5 in the New Jersey Statutes Annotated).

Contrary to Neumann's argument, the delineation of an AINreh does not convey authority to exercise eminent domain.[7] Upon delineation of an AINred, but not upon delineation of an AINReh, the area is "deemed to be a 'blighted area' for the purposes of Article VIII, Section III, paragraph 1" of the State Constitution.  N.J.S.A. 40A:12A-14; compare N.J.S.A. 40A:12A-6(c) and N.J.S.A. 40A:12A-8 with N.J.S.A. 40A:12A-14 and N.J.S.A. 40A:12A-15.[8]

---

[7]    Sections 2, 3 and 5 of Chapter 159 of the Laws of 2013, amending N.J.S.A. 40A:12A-5, -6, -8 and -15, limit the power of condemnation in AINreds delineated after the effective date of Chapter 159 to instances in which the governing body has given notice that redevelopment determination will authorize the municipality to use the power of eminent domain — that is, a "Condemnation Redevelopment Area," N.J.S.A. 40A:12A-6 (as amended by L. 2013, c. 159, § 2).

[8]    In this respect, N.J.S.A. 40A:12A-15 provides:

> With respect to a redevelopment project in an area in need of rehabilitation, the municipality or redevelopment entity, upon the adoption of a redevelopment plan for the area, may perform any of the actions set forth in [N.J.S.A. 40A:12A-8], except that with respect to such a project the

(continued)

Moreover, the delineation of an AINreh has no immediate effect.  In order to exercise the powers granted in N.J.S.A. 40A:12A-8, other than the power of eminent domain that is not granted with respect to an AINreh, the governing body must adopt a "redevelopment plan" in conformity with N.J.S.A. 40A:12A-7. See N.J.S.A. 40A:12A-15 (providing that a municipality or redevelopment entity "may proceed with clearance, replanning, conservation, development, redevelopment and rehabilitation of an area in need of rehabilitation" but only "[i]n accordance with the provisions of a redevelopment plan adopted pursuant to [N.J.S.A. 40A:12A-7]").  While a "redevelopment plan" may address an AINred, or an AINreh or both, N.J.S.A. 40A:12A-3, that does not mean that a redevelopment plan may provide for the taking or acquisition of property within an AINreh.

---

(continued)

   municipality shall not have the power to take or acquire private property by condemnation in furtherance of a redevelopment plan, unless: a. the area is within **(1)** an area determined to be in **need of redevelopment prior to the effective date of [L. 2013, c. 159], or (2) a Condemnation Redevelopment Area and the municipality has complied with the notice requirements under [N.J.S.A. 40A:12A-6(b)(5)(e)];** or b. exercise of that power is authorized under any other law of this State.

   (emphasis added; changes adopted in L. 2013, c. 159, § 5 shown in bold).

If there was any reasonable basis for concern about the threat of a municipality's obtaining authorization to effectuate an acquisition or taking as a consequence of a governing body's delineation of AINreh, since the adoption of Chapter 159 there no longer is. To the extent that Neumann argues otherwise, it misunderstands the law. Given that the Council has not, and with this decision may not implement Resolution No. 1, there is no reason to discuss the Blighted Areas Clause.

Neumann also claims that N.J.S.A. 40A:12A-14, as written prior to the adoption of L. 2013, c. 159, applied to old water and sewer infrastructure in need of repair or substantial maintenance only if at least fifty percent of the housing stock was also old. Section 4 of Chapter 159 eliminates any ambiguity that may have allowed Neumann to make that argument. N.J.S.A. 40A:12A-14 now addresses aged housing stock in clause (2), and aged water and sewer infrastructure separately in clause (6) as follows: "a majority of the water and sewer infrastructure in the delineated area is at least [fifty] years old and is in need of repair or substantial maintenance."

To the extent that it was not clear before, which we think it was, as amended by Section 4 of Chapter 159 there is no question now that N.J.S.A. 40A:12A-14 requires a governing body to determine "that a program of rehabilitation, as defined in

[N.J.S.A. 40A:12A-3], may be expected to prevent further deterioration and promote the overall development of the community" in every case.  By that we mean the finding is required no matter which one of the six criteria for delineating an AINreh now listed in N.J.S.A. 40A:12A-14 that a governing body applies.[9]

Neumann raises another question about the meaning of N.J.S.A. 40A:12A-14.  The contention is that because the sewer and water structure at issue lies under the public streets and rights of way, no other property may be included in this AINreh. The statutory language provides no support for that interpretation.  Moreover, as the evidence presented to the

---

[9]     In pertinent part, as amended by Section 4 of Chapter 159, N.J.S.A. 40A:12A-14 provides:

> a.  A delineated area may be determined to be in need of rehabilitation if the governing body of the municipality determines by resolution that a program of rehabilitation, as defined in [N.J.S.A. 40A:12A-3], may be expected to prevent further deterioration and promote the overall development of the community; and that there exist in that area any of the following conditions such that . . . (2) more than half of the housing stock in the delineated area is at least [fifty] years old; . . . or (6) a majority of the water and sewer infrastructure in the delineated area is at least [fifty] years old and is in need of repair or substantial maintenance.

Board and Council demonstrates, planning development and encouraging measures such as open space, stormwater collection and use of pervious pavement on private property are related to the strain on this City's antiquated, combined sanitary and stormwater sewer system. As things stand, the sewer system backs up and leaves untreated sewage in the streets of this portion of the southwestern section of Hoboken and others. Despite evidence that the sewer authority has undertaken projects that have had some minimizing impact on the flooding, there is also evidence suggesting the problem is far from solved.

Given our disposition of the case, it would serve no purpose to discuss Neumann's claim that Resolution No. 1 was adopted as a pretext for an ulterior motive — a purpose impermissible under the LRHL - and one the City cannot ameliorate with a program of rehabilitation because it does not own the sewer or water infrastructure.

Resolution No. 1 is vacated without prejudice to the Council's reconsideration of the question under current law.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2775-12T1